Upon the trial below, his Honor, the presiding judge, gave judgment proforma against the plaintiffs. In this opinion I do not concur, but believe that the plaintiffs were entitled to a judgment to the full amount of the injury sustained by them in consequence of the failure of the clerk, the defendant Watson, to issue a notice to Allen, as assigned in the declaration.
The bond on which the action is brought is in the form usual to such instruments, and concludes with the following covenant: "and in all things do and execute the several duties of said office, as required by law." Did the law make it the duty of Watson as clerk of the court to issue the notice to Allen, as set forth in the case, and have the plaintiffs been injured by his failure so to do? To my mind it is perfectly clear that it was his duty, ex officio, to issue the notice, and that not to do it was a breach of his bond. The Legislature of our State has exhibited a praisworthy [praiseworthy] anxiety to guard the interest of orphans. From 1762 to 1825 they have enacted many laws with that view. To save the expensive and often tedious applications to a court of equity, by the act of 1762, ch. 69, they gave to the Superior and county courts the care of orphans and their estates in their respective counties, making it their duty to appoint guardians and take from them bond with good and sufficient sureties; and to insure a vigilant and faithful discharge (291) of this duty, the magistrates who are on the bench when the appointment is made and the bond taken are, themselves, constituted *Page 206 
sureties of the guardian if they fail to take such sureties as are good at the time. And in order that the orphan may be at no loss to know to whom to look for indemnity in such a case, by the act of 1825, ch. 18, sec. 2, it is made the duty of the clerk of the court "to make a record of and enter at large upon their docket and indorse upon the guardian bonds the names of the justices present in court and granting the guardianship," etc. By section 15 of the act of 1762 the county court is required to hold an orphan's court annually, to which all guardians are required to return their accounts and have them settled; and the act of 1816 makes it the duty of the clerk, ex officio, to issue notices to all guardians to make such returns. By sections 4, 9, and 16 of the act of 1762 it is made the duty of the several courts to remove any guardian, by them appointed, who is abusing his trust, "or where such guardian or his sureties are likely to become insolvent," and "to make such order for securing the estate of the ward as they shall think fit and proper." In 1820, ch. 5, for greater security of the estates of orphans, the Legislature provides that all guardians shall renew their bonds every three years from the date of their respective appointments. And by section 2 it is made the duty of the clerk of each court to issue a notice in the shape of a scire facias against each guardian failing so to do. By this act two evils were inflicted upon those whose interest it was intended to subserve; the one was that no sci. fa. issued without an order of the court, and the second was that much expense was incurred. To remedy them, another act was passed in 1824, ch. 16, which provides that instead of the scire facias required by the act of 1820, "the clerks be (292) required to issue an ex officio summons. This is a succinct history, in part, of legislation of this State upon this important and interesting subject. The object of the Legislature cannot be mistaken; it is to protect those so helpless in themselves and so needing protection; and if these laws are duly enforced it can scarcely be but that the estates of orphans will be secured.
The question in this case arises under the act of 1824. The phraseology is certainly awkward. The clerk is required to issue an ex officio summons; the meaning is too obvious to excite any doubt; it is that the clerk shall,ex officio, issue a summons. By the act of 1820 it is made the duty of the clerk to issue a sci. fa., and the practice under it was that no sci. fa. issued without an order of court. The consequence was that it very rarely issued at all, for the want of some person to move in the matter. To remove this difficulty, it was made the official duty of the clerk to issue the notice. If it be his official duty, then unquestionably the omission on his part to issue the notice is a breach of his bond. But it has been urged here that the records of the county court of Johnston, when the defendant Watson was appointed clerk, did not *Page 207 
show that Allen had not renewed his bonds, and that he, Watson, was ignorant of the fact, and that no request was at any time made to him to issue a notice, nor did the court make any order to that effect. This may be all true, and doubtless is so; but it does not, in my estimation, form any justification for Watson, or, in other words, prevent a breach of his bond. There was no necessity for a request or order of court, for it was his duty as clerk and by virtue of his office to issue it. If he was ignorant of the fact, as alleged, it was a culpable ignorance, which cannot and ought not, in my opinion, to protect him. Allen's bond was renewable at February Term, 1836, and at February Term, 1839. Watson was appointed clerk at August Term, 1837, and then took possession of the records. They told him when Allen was appointed, and of course when this bond was renewable, and did not show that it ever had been renewed. (293)
It is asked, How far back was it the duty of the clerk to examine the records to find out who were defaulting guardians? The question is not without its difficulties, and I would not undertake to lay down any rule upon the subject, if any can be. In my opinion, it is not necessary to say more upon this point than that, here, the time is too short. But eighteen months elapsed from the period when Allen ought first to have renewed his bond, to wit, February Term, 1836, and the time when Watson was appointed clerk, to wit, August Term, 1839. And in 1839, when it ought, I presume, again to have been renewed, Watson was the clerk of the court.
It is no answer to the claim of the plaintiffs that Allen's first failure was while Saunders was the clerk of the court, and that his failure to issue the notice gave them a right of action against him and his sureties. This is certainly so, but it does not relieve the defendants from their liability for a breach of their bond by a like failure on the part of Watson.
It is asked, What damages are the plaintiffs entitled to, and by what rule are they to be ascertained? My answer is, the plaintiffs are entitled to damages to the amount of the injury sustained by them from the failure in the performance of official duty by the defendant Watson and that in this case a rule has been resorted to which is satisfactory to my mind, to wit, the ability of the guardian, Allen, to pay to the plaintiffs what he owed them at the time the notice ought to have been issued by Watson, and, his, now, entire inability. In August, 1837, when Watson was appointed clerk, Allen and his sureties were solvent, and so continued up to February Term, 1839; that is, Allen had property sufficient to pay all his debts and, of course, what he owed the plaintiffs. Had the defendant Watson issued the notice to Allen from February Term to May Term, 1839, during which period Allen *Page 208 
(294) and his sureties were solvent, the court might, and doubtless would, have taken the necessary steps to secure the estate of his wards, either by compelling him to renew his bonds and give new and sufficient sureties or by taking such other steps as they might have deemed necessary.
Believing, then, that it was the duty of the defendant Watson, exofficio, to have issued the notice to the guardian, Allen, I am constrained to say, in the language of his official bond, that he has not "done and executed the several duties of his office as required by law," and that the plaintiffs have a right to be compensated in damages to the full amount of the injury they have sustained by his delinquency.
In my opinion, the judgment of nonsuit was erroneous, and there ought to be a venire de novo.